(No. 6066.   April 23, 1934.)

WALTER H. HANSON, Administrator of the Estate of C. A. STILLINGER, Deceased, and KATE I. BAKER, Executrix of the Estate of LILLIE STILLINGER, Deceased, Appellants, v. J. P. ROGERS, and SOPHIA M. ROGERS, Executrix of the Estate of J. P. ROGERS, Deceased; JOHN COONY, THE MERCED MINING AND MILLING COMPANY, a Corporation, H. C. WILLIS, W. A. CONNERS, ANDREW PARKENSON, A. L. DOBLE, and N. J. WYCKOFF, Trustees or Directors of Said MERCED MINING AND MILLING COMPANY, and NIAGARA PLACER MINING COMPANY, a Corporation, Respondents.

[32 Pac. (2d) 126.]

Walter H. Hanson and F. C. Keane, for Appellants.

Chas. E. Horning and James A. Wayne, for Respondents.

WERNETTE, J.—January 27, 1922, C. A. Stillinger and Lillie Stillinger, his wife, filed suit in the district court for Shoshone county against J. P. Rogers and others to quiet title to the following placer mining claims located in Shoshone county, Idaho, to wit: The Maryland No. 5, the Maryland and the Snowshoe. It was alleged in the complaint that the defendants claimed to be the owners of the following placer mining claims also located in Shoshone county, to wit: The June Bug, the Mayflower, the Bluebird, the Lilly, the Susan and the St. John. February 16, 1922, defendant, J. P. Rogers, filed a general demurrer to the complaint, which demurrer was overruled February 28, 1922. Rogers filed an answer and affirmative defense April 3, 1922. The plaintiffs filed a general demurrer to the answer, April 7, 1922, which demurrer was not set down for hearing until May 23, 1923. On the date so set the attorney for defendant, J. P. Rogers, appeared but counsel for plaintiffs did not appear. The court gave plaintiffs five days within which to serve and file a brief in support of their demurrer. On July 12, 1923, the court overruled the demurrer and gave plaintiffs twenty days to answer, but on July 27, 1923, the court, "on the informal application of the plaintiffs," made an order vacating the former order overruling plaintiffs' demurrer.

No action whatever was taken in the suit from July 27, 1923, to March 26, 1925. In the meantime, in July, 1924, plaintiff C. A. Stillinger, died. March 26, 1925, defendant, J. P. Rogers, through his attorney, filed a motion for change of venue. Some time after this J. P. Rogers died and his widow, Sophia M. Rogers, became executrix of his estate, and as such on December 3, 1929, sold and conveyed the property in litigation to others, the deed therefor being recorded February 12, 1930.

From March 26, 1925, to January, 1931, a period of more than five years, no steps were taken to dispose of the motion for a change of venue or plaintiffs' demurrer to the answer.

But on December 13, 1930, a written stipulation was signed by respective counsel for the litigants, which was later and on January 16, 1931, filed. It was stipulated that Walter H. Hanson, administrator of the estate of C. A. Stillinger, deceased, might be substituted as a party plaintiff in lieu of the said C. A. Stillinger; that Kate I. Baker, as administratrix of the estate of Lillie Stillinger, deceased, might be substituted as a party plaintiff in lieu of the said Lillie Stillinger, and that Sophia M. Rogers, as executrix of the estate of J. P. Rogers, deceased, might be substituted as party defendant in lieu of the said J. P. Rogers, but no formal motion for an order of substitution was made.

January 9, 1931, an order of the court was made setting plaintiffs' demurrer to the answer and the motion for change of venue for hearing on January 14, 1931. On that date an order was made sustaining the demurrer and giving defendants ten days within which to amend, ''with the proviso that if their amended answer be not served at that time, that their default be entered.'' At the same time, January 14, 1931, an order was entered denying the motion of defendant, J. P. Rogers, for a change of venue. The defendants having failed to file an amended answer default was entered by the clerk of the court February 6, 1931, and on April 25, 1931, findings of fact, conclusions of law and decree were rendered and filed quieting title to the said placer mining claims, to wit: The Maryland No. 5, the Maryland and the Snowshoe.

April 4, 1932, respondent, Niagara Placer Mining Company, filed a motion to vacate and set aside the said default of J. P. Rogers and Sophia M. Rogers, as executrix of the estate of J. P. Rogers, deceased, entered February 6, 1931, as well as the findings of fact, conclusions of law and decree, and also to substitute respondent as a defendant in place of J. P. Rogers and Sophia M. Rogers, as executrix of the estate of J. P. Rogers, deceased, or in lieu of said substitution that respondent be permitted to intervene as a party defendant, and as a party whose interests were adverse to plaintiffs. The motion was supported by the affidavit of the president of the respondent company, and

opposed by the affidavits of appellant, Walter H. Hanson. May 2, 1933, an order was made setting aside the default of J. P. Rogers and Sophia M. Rogers, as executrix as aforesaid, and by such order the findings of fact, conclusions of law and decree were also vacated and set aside, and respondent substituted as the defendant in place of J. P. Rogers and the executrix, Sophia M. Rogers. The appeal is from that order.

The default in this case was entered on February 6, 1931, and the decree of the court was rendered and filed April 25, 1931. The motion to vacate and set aside the default and the decree of the court was not filed until April 4, 1932, over eleven months after the decree had been rendered and filed and more than a year after the default had been entered. The basis of the motion to vacate and set aside the default, as well as the decree, was that the default was entered and the decree rendered by reason of the mistake, inadvertence, surprise or excusable neglect of the Niagara Placer Mining Company, its officers and agents and the unit-holders who had an interest in such corporation. There was also an intimation that the entering of the default and the procuring of the decree were fraudulently obtained, but the showing in support of the motion does not state sufficient facts to show that fraud was actually perpetrated.

Assuming for this decision, but not deciding, that the Niagara Placer Mining Company had the right to have itself substituted as a party defendant in this action over a year after default was entered and eleven months after the decree of the court was rendered and filed, still the court had no right or authority to vacate and set aside the default and vacate and set aside the findings of fact, conclusions of law and decree on the ground of mistake, inadvertence, surprise or excusable neglect, for the reason that the motion and application came too late. That portion of section 5-905, I. C. A., applicable, is as follows:

"The court may, in furtherance of justice and on such terms as may be proper, allow a party to amend any pleading or proceeding by adding or striking out the name of any party, or by correcting a mistake in the name of a

party or a mistake in any other respect, and may upon like terms, enlarge the time for answer or demurrer. The court may likewise, in its discretion, after notice to the adverse party, allow upon such terms as may be just an amendment to any pleading or proceeding in other particulars, and may, upon like terms, allow an answer to be made after the time limited by this Code, and also relieve a party, or his legal representative, from a judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise or excusable neglect; and whenever, for any reason satisfactory to the court or the judge thereof, the party aggrieved has failed to apply for the relief sought during the term at which such judgment, order or proceeding complained of was taken, the court, or the judge thereof in vacation, may grant the relief upon application made within a reasonable time, not exceeding six months after the adjournment of the term. . . . . "

This court has repeatedly held, under section 5–905, I. C. A., that where a proceeding has been taken against a litigant through his mistake, inadvertence, surprise or excusable neglect, the maximum time in which such party can make application to be relieved from such proceeding is six months from the date of the adjournment of the term at which such proceeding was taken. (*Savage v. Stokes, ante,* p. 109, 28 Pac. (2d) 900, and cases therein cited.) The primary object or purpose of the applicant, Niagara Placer Mining Company, was to vacate and set aside the default which had been entered and upon which the decree was rendered. If successful in having the default vacated and set aside, the vacating of the findings of fact, conclusions of law and decree would naturally follow. In the affidavit of Walter H. Hanson it is positively stated as a fact, which has not been denied, that the term of the district court at which default was entered adjourned February 25, 1931, and a new term of court convened on March 2, 1931. So that it affirmatively appears that more than six months had expired after adjournment of the term during which the default was entered and prior to the filing of the motion to open the default and vacate the decree.

■ A careful reading of section 5–905, I. C. A., convincingly shows that said section clearly contemplates that the default for which relief is provided must be that of a party litigant and not of a stranger to the proceeding. Neither the Niagara Placer Mining Company nor unit-holders were parties to the action at the time when the default was entered or the decree rendered. They were entire strangers to the record (and the unit-holders are now) so that no default could be taken against them nor a decree, and they are not in a position to ask to be relieved of a default or to have a decree set aside taken at a time when they were not parties to the action.

■ In the lower court the respondent, Niagara Placer Mining Company, did not attempt to have the findings of fact, conclusions of law and decree set aside on the ground that they were void, but sought to have the same set aside and vacated on the grounds that they had been obtained against it through mistake, inadvertence, surprise or excusable neglect. But said respondent now contends that the decree was void and therefore could be vacated upon motion made within a reasonable time, section 5–905, I. C. A., not being applicable to motions to set aside and vacate void judgments. It is the well-settled law of this state that if a judgment is void as shown upon the face of the judgment-roll the court, upon motion of any party to the action, or upon its own motion can vacate the judgment at any time; that the time limitations set forth in section 5–905, I. C. A., do not apply; that where the invalidity of a judgment that is void does not appear on the face of the judgment-roll the same may be vacated upon motion made within a reasonable time. (*Savage v. Stokes, supra; McAllister v. Erickson,* 45 Ida. 211, 261 Pac. 242; *Armitage v. Horseshoe Bend Co.,* 35 Ida. 179, 204 Pac. 1073; *Nixon v. Tongren,* 33 Ida. 287, 193 Pac. 731; *Miller v. Prout,* 33 Ida. 709, 197 Pac. 1023.) But this court has also held that such "a reasonable time" within which a motion may be made to set aside a judgment or other proceeding which is not shown to be void on the face of the judgment-roll is six months after the adjournment of the term at which such proceeding was had

or judgment rendered, following by analogy the time limit as specified in section 5–905, I. C. A. (*Savage v. Stokes, supra.*) It follows then that if the decree in question is not void as shown upon the face of the judgment-roll that respondent's application or motion to set aside and vacate the default and vacate the decree came too late; more than six months after the adjournment of the term at which the default was entered.

When the case was originally presented to this court it was practically conceded by respondent, Niagara Placer Mining Company, that the decree was not void as shown upon the face of the judgment-roll. In its brief it used the following language: "The decree was therefore void, and being void was subject to being vacated upon motion made within a reasonable time, section 5–905, I. C. A., having no application to motions to vacate and set aside void judgments." Thus showing that respondent recognized the fact that the motion to vacate the judgment had to be made within a reasonable time, which has reference only to void judgments which are not shown upon the face of the judgment-roll. However, this court raised the question on its own motion as to whether the decree was void as shown upon the face of the judgment-roll by reason of the fact that no formal motion was made or order entered substituting Walter H. Hanson, as administrator of the estate of C. A. Stillinger, deceased, Kate I. Baker, as administratrix of the estate of Lillie Stillinger, deceased, and Sophia M. Rogers, as executrix of the estate of J. P. Rogers, deceased. Respective parties were requested to submit briefs on this question, which was done. It appears that prior to January 16, 1931, C. A. Stillinger and Lillie Stillinger, original plaintiffs, and J. P. Rogers, one of the original defendants, died, and Walter H. Hanson had been appointed administrator of the estate of C. A. Stillinger, Kate I. Baker had been appointed administratrix of the estate of Lillie Stillinger and Sophia M. Rogers had been appointed executrix of the estate of J. P. Rogers. It is not contended by any of the parties that the action in question is one that does not

survive upon the death of any or all of the parties. On January 16, 1931, the following stipulation was filed:

"It is hereby stipulated and agreed by and between the plaintiff and the defendant, acting thru their respective counsel, that Walter H. Hanson, Administrator of the Estate of C. A. Stillinger, deceased, may be substituted herein as a party plaintiff in lieu of the said C. A. Stillinger, and that Kate I. Baker, as Administratix of the Estate of Lillie Stillinger, deceased, may be substituted herein as a party plaintiff in lieu of the said Lillie Stillinger, and that Sophia M. Rogers, the Executrix of the Estate of J. P. Rogers, deceased, may be substituted herein as party defendant in lieu of the said J. P. Rogers.

"Dated at Wallace, Idaho, December 13th, 1930.

"(Signed) WALTER H. HANSON,
"Attorney for Plaintiff.
"J. F. AILSHIE,

"Attorney for defendant J. P. Rogers and Sophie M. Rogers, Executrix of the Estate of J. P. Rogers, Deceased."

It is to be observed that Walter H. Hanson signed the stipulation as attorney for plaintiff instead of as attorney for himself as administrator of the estate of C. A. Stillinger, deceased, and as attorney for the administratrix of the estate of Lillie Stillinger, deceased. This, undoubtedly, was an error or inadvertence on his part, and the error is too trifling and inconsequential to be controlling. (*Campbell v. West*, 93 Cal. 653, 29 Pac. 219.)

Section 5-319, I. C. A., reads as follows:

"An action or proceeding does not abate by the death or any disability of a party, or by the transfer of any interest therein, if the cause of action or proceeding survive or continue. In case of the death or any disability of a party, the court, on motion, may allow the action or proceeding to be continued by or against his representative or successor in interest. In case of any other transfer of interest the action or proceeding may be continued in the name of the original party, or the court may allow the person

to whom the transfer is made to be substituted in the action or proceeding. An action or proceeding brought by or against any public officer in his official capacity and which action or proceeding is pending at the time of his death, resignation, retirement or removal from office does not abate. The court on its own motion or on motion for substitution may substitute the successor in office and allow the action or proceeding to be continued against such successor."

While the above stipulation was filed, no formal motion and order of substitution was made. This presents the question: Is a formal motion and order of substitution necessary to enable an administrator or executor to carry on the litigation of a deceased party litigant? The latest expression of this court on the question is found in *Oatman v. Hampton* (on rehearing), 43 Ida. 689, 256 Pac. 529. In the original opinion, 43 Ida. 675, 256 Pac. 529, this court said:

"It is not necessary that an acting administrator be substituted in order to carry on litigation affecting the property of the deceased."

This particular holding of the court was strenuously attacked on rehearing and the court, after quoting the above statement, said:

"The language, while not so intended, is susceptible to the construction that in no instance is it necessary that an administrator be substituted. Such was never in the court's mind. It is elementary that an adverse party can secure no rights as against the decedent's representatives or heirs until the latter become parties to the suit. Having in mind the instant case, what the court sought to say, and now does say, is that a court order of substitution is not necessary to enable an administrator to carry on his intestate's litigation by appeal."

In an earlier case, *Holter v. Hauser,* 33 Ida. 406, 195 Pac. 628, this court dismissed an appeal on its own motion, holding that a new corporation which claimed to have succeeded to the interests of a defunct corporation had no right to continue the action in the absence of an order of the

court allowing substitution. The court, after quoting the provisions of C. S., sec. 6652, now sec. 5–319, I. C. A., among other things said:

"Since the original corporation is defunct, and no order of the court has ever been made allowing the action to be continued by the new corporation which claims to have succeeded to its interests, there is no party before the court competent to take an appeal. The attempted appeal in the name of the original corporation does not confer jurisdiction on this court."

In this holding the court apparently followed the rule in California. (*Crossman v. Vivienda Water Co.*, 150 Cal. 575, 89 Pac. 335.) Under the decisions of the California court a distinction seems to be recognized between a natural person who dies and a corporation that becomes defunct. We are not called upon in this case to determine as to whether any real distinction exists as between the two. We believe that the rule as laid down in *Oatman v. Hampton, supra*, is reasonable, logical and amply supported by authority and is applicable in this case.

The early California law, section 16, Practice Act, re-enacted, section 385, Code of Civil Procedure, so far as applicable is identical with the Idaho act, that portion reading as follows:

"An action or proceeding does not abate by the death, or any disability of a party, . . . . if the cause of action survive or continue. In case of the death or any disability of a party, the court, on motion, may allow the action or proceeding to be continued by or against his representative or successor in interest. . . . . "

The supreme court of California in *Gregory v. Haynes*, 13 Cal. 591, decided in 1859, which case was again before the court four years later, 21 Cal. 443, in disposing of a question similar to ours used the following language:

"The objection urged to the validity of the judgment is, that the plaintiff, Wenborn, had died before the trial and verdict, but that the proceedings were continued and judgment entered in his name as plaintiff. It appears, however,

that after the trial the Court made a judgment or order with this recital, to wit: 'This action having been continued, in consequence of the death of plaintiff, by his executor, Samuel Webb, and the jury having found a verdict for the plaintiff,' and then judgment is awarded in favor of the plaintiff. Another judgment appears subsequent in order, but of the same date, in favor of the plaintiff, and both judgments are entitled in the name of Wenborn as plaintiff. This judgment was before this court in the case of *Gregory v. Haynes,* reported in 13 Cal. 591, when it was decided to be a valid judgment in favor of Webb as executor of Wenborn. The Court says: 'We think this recital clearly shows, whether with formality or not, the suggestion of the death of the original plaintiff, and a continuance of the cause or a revival of it in the name of the executor. If there was any irregularity in all this, it cannot be corrected in this collateral way.' The continuing the name of Wenborn, instead of inserting that of Webb, executor, as plaintiff, in the title of the judgment or order in which this recital is contained, and also in the more formal judgment was an error of form, not rendering the judgment void. The judgment was therefore effectual to quiet the title of Webb, as executor of the will of Wenborn, against the defendants Sarah Boston and her husband. This action was commenced and a notice of *lis pendens* filed before the conveyance of Sarah Boston and her husband to Calderwood, and the judgment was binding upon him and those claiming under him.''

True, the particular section of the statute in question was not specifically mentioned in either hearing, yet the principle of law as later specifically announced is clearly set forth. In *Phelan v. Tyler,* 64 Cal. 80, 28 Pac. 114, the particular question with reference to the statute was raised as is raised here, and the court used this language:

''If the death of John Dunlap, occurring at the time it did, operated as an ouster of the jurisdiction of the supreme court of the case, the conclusion at which the court arrived

is doubtless correct. But the death of a party pending an appeal does not have that effect in any case. 'An action or proceeding does not abate by the death or disability of a party . . . . if the cause of action survive or continue. In case of the death or any disability of a party, the court, on motion, may allow the action or proceeding to be continued by or against his representative or successor in interest.' Code Civil Proc. sec. 385. There is nothing in the Code which would justify the inference that the death of a party pending an appeal ousts the jurisdiction of the supreme court, and renders its judgment void, unless before the rendition thereof a representative of said deceased party be substituted in his stead. This question was not directly involved in *Ewald v. Corbett,* 32 Cal. 493, or in *McCreery v. Everding,* 44 Cal. 284, although there are expressions in both which militate against the view which we entertain on the subject, and which seems to us to be supported by a preponderance of the authorities. The reason why, 'in such cases, the judgment is simply erroneous, but not void, . . . . is because the court, having obtained jurisdiction over the party in his life-time, is thereby empowered to proceed with the action to final judgment; and, while the court ought to cease to exercise its jurisdiction over a party when he dies, its failure to do so is an error to be corrected on appeal if the fact of the death appears upon the record, or by writ of error *coram nobis* if the fact must be shown *aliunde.*' Freem. Judgm. s. 153.''

In the late California case of *Hogan v. Superior Court,* 74 Cal. App. 704, 241 Pac. 584, decided by the district court of appeal, but in which a rehearing was denied by the supreme court, in which a large number, if not all, of the California decisions with reference to the particular point in question are cited, analyzed and discussed, the court held that the judgment though irregular is not void, and is not subject to collateral attack. From the authorities reviewed it conclusively appears that the failure in not securing a formal order of substitution, in the event of the death of a natural person,

constitutes only an irregularity, but which would not make void the judgment itself. The law, as announced by the California court, clearly upholds the rule as stated in *Oatman v. Hampton, supra.*

■ An examination shows that our section 5–319, I. C. A., was adopted many years after the construction had been placed on the identically same language by the supreme court of California in *Gregory v. Haynes, supra.* This court has held that where a statutory section is adopted from another state, the construction placed upon it by the supreme court of that state, while not conclusive, is highly persuasive. (*Mochel v. Cleveland,* 51 Ida. 468, 5 Pac. (2d) 549; *Gallafent v. Tucker,* 48 Ida. 240, 281 Pac. 375; *Oylear v. Oylear,* 35 Ida. 732, 208 Pac. 857.)

■ If there is any question raised as to the substitution of an administrator or executor for a deceased party litigant, the following questions are presented for judicial determination: 1. Is the party litigant dead? 2. Is the party asked to be substituted the administrator or executor of the deceased party litigant? 3. Does the cause of action survive? In the instant case there was no controversy as to any of these questions. The attorney for the administrator and administratrix, respectively, of the original plaintiffs, and the attorney representing the executrix of the defendant, J. P. Rogers, deceased, entered into the stipulation above set forth. The proper parties were before the court, the trial court acted upon this stipulation and recognized the parties as substituted parties and conducted the litigation in all respects as if a formal order of substitution had been made. Under such circumstances as we have here, it seems to us that for an appellate court to hold that the lower court did not have jurisdiction for failure of a formal motion and order of substitution, would be to follow the letter rather than the spirit of the law.

From what has been said we conclude that the court erred in setting aside and vacating the default and setting aside and vacating the findings of fact, conclusions of law and

decree, and it is hereby ordered that the default, findings of fact, conclusions of law and decree be reinstated.

Costs to appellants.

Budge, C. J., and Givens and Morgan, JJ., concur.

Holden, J., dissents.