UNITED STATES of America for the Use of OLD DOMINION IRON & STEEL CORP., a Corporation, Plaintiff-Appellee.

v.

MASSACHUSETTS BONDING AND INSURANCE COMPANY, a Corporation, Defendant-Appellant.

No. 12919.

United States Court of Appeals
Third Circuit.

Argued Oct. 28, 1959.

Decided Nov. 20, 1959.

William M. Ivler, New York City (Blank, Rudenko, Klaus & Rome, Philadelphia, Pa., on the brief), for appellant.

David Novack, Camden, N. J., for appellee.

Before GOODRICH and KALODNER, Circuit Judges, and WOOD, District Judge.

**WOOD, District Judge.**

The question to be decided is whether sufficient notice of sums owing 'to a supplier was given by the supplier to a prime contractor so as to permit the supplier to recover against the bonding company under the provisions of the Miller Act.[1]

Foster-Newman Contracting Co., Inc., entered into a written contract with the United States of America for construction at the McGuire Air Force Base in the State of New Jersey. Massachusetts Bonding and Insurance Company became surety in accordance with the aforesaid Act. Foster-Newman subcontracted with Benjamin Lessner Co., Inc. Lessner purchased material from plaintiff-appellee, Old Dominion Iron and Steel Corporation.

Lessner failed to pay plaintiff for the material supplied. Plaintiff now invokes the provisions of the Miller Act, claiming that sufficient notice was given the prime contractor, within the time prescribed by the Act, so as to permit the plaintiff to recover on the bond.[2] The plaintiff seeks recovery of $3300, the value of the material supplied the subcontractor.

We are brought to the crux of the case by a review of the plaintiff's evidence which plaintiff contends constitutes sufficient notice under the Act.

On January 22, 1957, within the 90 day period, Lessner wrote a letter [3] to Foster-Newman, advising them of outstanding claims, including plaintiff's claim, against Lessner. The letter also stated that Lessner would "indemnify" and "hold harmless" Foster-Newman

---

[1]. Section 2 of the Act of August 24, 1935, c. 642, 49 Stat. 794, 40 U.S.C.A. § 270b, provides:

"(a) Every person who has furnished labor or material in the prosecution of the work provided for in such contract, in respect of which a payment bond is furnished under section 270a of this title and who has not been paid in full therefor before the expiration of a period of ninety days after the day on which the last of the labor was done or performed by him or material was furnished or supplied by him for which such claim is made, shall have the right to sue on such payment bond for the amount, or the balance thereof, unpaid at the time of institution of such suit and to prosecute said action to final execution and judgment for the sum or sums justly due him: *Provided, however,* That any person having direct contractual relationship with a subcontractor but no contractual relationship express or implied with the contractor furnishing said payment bond shall have a right of action upon the said payment bond upon giving written notice to said contractor within ninety days from the date on which such person did or performed the last of the labor or furnished or supplied the last of the material for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed. Such notice shall be served by mailing the same by registered mail, postage prepaid, in an envelop addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or in any manner in which the United States marshal of the district in which the public improvement is situated is authorized by law to serve summons."

[2]. The court below rendered judgment for the plaintiff on the theory that the subcontractor's action on behalf of the supplier was "ratified" by the supplier, having learned of the subcontractor's action and having apparently acquiesced therein.

[3]. "January 22, 1957
"Foster-Newman Contracting Co.
3622 Thirteenth Avenue
Brooklyn 18, N. Y.
   Re: Contract ENG–6161
      McGuire A.F.B.
"Gentlemen:
"Regarding the financial status of our contract work with suppliers and Sub-Contractors, the following is a summary of our accounts payable:

| * | * | * | * | * |

"Old Dominion Iron & Steel Corp. 3300.00

| * | * | * | * | * |

"We certify that the above sub-contractors and the above material suppliers are the only firms to whom money is due or will become due on the subject contract, and the amounts stated are correct. We further promise to indemnify and hold you harmless from any and all claims which may arise on our contract including any legal costs.
"Very truly yours,
   Benjamin Lessner Co., Inc."

from any such claims. It is admitted that the plaintiff at that time had no knowledge of this letter.[4] Later, however, on February 12, 1951, Lessner wrote to the plaintiff [5] advising plaintiff "we have a considerable amount of money coming to us" and "we have even gone so far as to list the accounts with the prime contractor * * * so that your interests would be protected." This letter was admitted in evidence in the court below, over objection, to show that the plaintiff had notice that the letter of January 22, 1957 had gone to the prime contractor.

Briefly stated, the plaintiff's argument is that since the subcontractor advised the prime contractor that he (subcontractor) had a number of creditors, of which plaintiff was one, and that since the subcontractor had told the plaintiff that he (subcontractor) had listed plaintiff's claim with the prime contractor, the notice requirements of the Miller Act were satisfied.

■■■ We cannot agree. Having in mind that the applicable section of the Miller Act is "remedial" and should be liberally construed,[6] nevertheless we find that the plaintiff here did nothing to secure the protection and benefits afforded him by the Act. As was stated in the Bowden case,[7] the provisions of the Act require a minimum of attention and effort.

■ In the Fleisher case,[8] the Supreme Court said: "We think that a distinction should be drawn between the provision explicitly stating the condition precedent to the right to sue and the provision as to the manner of serving notice." 311 U.S. at page 18, 61 S.Ct. at page 83. Certainly that case, in which there was written notice from the plaintiff-supplier to the prime contractor, does not relieve the plaintiff here of the responsibility of giving some notice himself.

The letter of February 12, 1957,[9] does not avoid the explicit result of the Bowden case, supra. In neither the Bowden case nor the case at bar did the plaintiff-supplier take any action to protect his interests by complying with the Act. The mere writing of a letter by the subcontractor to the plaintiff, informing

---

**4.** A similar situation was present in the case of Bowden v. United States for the Use of Malloy, 9 Cir., 1956, 239 F.2d 572: The subcontractor wrote the prime contractor a letter listing creditors of the subcontractor and the amount due each. The supplier, however, had no knowledge of this letter until the trial. The court held that the letter sent by the subcontractor did *not* constitute sufficient notice under the Miller Act, since it was not sent on the authority of the supplier.

**5.** "February 12, 1957
"Old Dominion Iron & Steel Corp.
Belle Isle,
Richmond 3, Virginia.
  Attention: Mr. Jesse P. Dilday
"Dear Mr. Dilday:
"Answering your letter of February 7, please be advised that we have a considerable amount of money coming to us on the McGuire Air Force Base project for which you furnished equipment on our order #75354. The job is in the last stages of completion and full settlement is expected in forty-five days.
"We have even gone so far as to list the accounts with the prime contractor,

Foster-Newman Contracting Company, so that your interests would be protected. Please bear with us until final settlement and you will get your money in full.
  "Very truly yours,
    Benjamin Lessner Co., Inc.
    (signed) Benjamin Lessner"

**6.** Fleisher Engineering & Construction Co. v. United States for Use of Hallenbeck, 1940, 311 U.S. 15, 61 S.Ct. 81, 85 L.Ed. 12; United States for Use of Birmingham Slag Co. v. Perry, 5 Cir., 1940, 115 F.2d 724; Coffee v. United States for Use of Gordon, 5 Cir., 1956, 157 F.2d 968.

**7.** See footnote 4, supra. In that case the court stated: "We do not believe that Congress intended to have it held that such little expenditure of effort is too much diligence to require of a supplier in order that he may secure his right of action on the payment bond." 239 F.2d at page 578.

**8.** See footnote 6.

**9.** Quoted in footnote 5, supra.

plaintiff that his claim had been listed with the prime contractor, cannot cure the fatal defect in plaintiff's case.

It must be noted that in the .Coffee case, supra, there was a written exhibition to the contractor by the claimant as a notice of his claim. In the Houston case [10] there was "oral notice to principal contractor" from the claimant, and a written "acknowledgment of the request, and full recognition of Denton's (subcontractor) .indebtedness to Trane (materialman).". In the Fleisher case, supra, and the Birmingham Slag case, supra, there was also written notice from the claimant to the prime contractor.

The judgment is reversed and the cause remanded with directions to enter judgment for the appellant with costs to be paid by appellee.

---

10. Houston Fire & Casualty Insurance Company v. United States for Use of Trane Company, 5 Cir., 1954, 217 F.2d 727, 729.